

[

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

RAY KOLOSETA PITOAU,

                       Petitioner,

v.

SEAN MOORE, Warden, et al.,

                     Respondents.

Case No. 22-cv-01677-MMA (MSB)

**ORDER:**

**DENYING PETITION FOR WRIT OF HABEAS CORPUS; and**

[Doc. No. 1]

**DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

      Petitioner Ray Pitoau ("Petitioner" or "Pitoau") is a state prisoner proceeding pro se with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Pitoau challenges his convictions for assault and assault with a firearm in San Diego Superior Court case no. SCD273138. The Court has read and considered the Petition [Doc. No. 1], the Answer and Memorandum of Points and Authorities in Support of the Answer [Doc. Nos. 6, 6-1], the Traverse [Doc. No. 10], the lodgments and other documents filed in this case, and the legal arguments presented by both parties. For the reasons discussed below, the Court **DENIES** the Petition and **DISMISSES** the case with prejudice. The Court also **DECLINES** to issue a Certificate of Appealability.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Greene v. Henry*, 302 F.3d 1067, 1072 (9th Cir. 2002) ("Under the AEDPA, we are required to 'defer to state court findings of fact unless based on an unreasonable determination of the facts in light of the evidence presented' in the state court proceedings."). The state appellate court recited the facts as follows:

> On August 6, 2017, brothers Jason, Joshua, and Stephen attended a concert at Petco Park. They drank alcohol before, during, and likely after the concert.
>
> After the concert, around midnight, the brothers met up with some of Jason's friends in the nearby Gaslamp Quarter. Jason and the friends were all off-duty law enforcement officers. The group went to two bars. Bouncers escorted Joshua and Jason out of the first bar after Joshua got into an argument with other patrons. The group decided to call it a night a little after 1:00 a.m.
>
> As the group walked down the sidewalk, Joshua passed Pitoau, who was sitting on a handrail outside a restaurant. The jury heard conflicting testimony about what happened next.
>
> According to prosecution witnesses, Pitoau started a verbal altercation, hopped off the handrail, raised his shirt to reveal a handgun tucked in his waistband, and approached Joshua. When Joshua said he did not want any trouble, Pitoau "drew his weapon and pointed it at [Joshua]." Joshua yelled out that someone had a gun, and Jason intervened to attempt to disarm Pitoau. Jason was unsuccessful, and Pitoau fired two shots, striking Jason and an uninvolved bystander, both of whom were treated for their wounds at hospitals.
>
> According to Pitoau, it was Joshua who started the verbal altercation as he walked by. Pitoau was willing to fist-fight Joshua one-on-one, but Joshua left and quickly returned with his group of friends. The group mocked Pitoau and "started fanning out" around him. Pitoau believed the group was going to "jump" him and possibly kill him. Pitoau backed up and bumped into his friend (Emery Z.), who had been waiting with Pitoau

22-cv-01677-MMA (MSB)

outside the restaurant.  When he bumped into Emery, Pitoau felt Emery holding something that turned out to be a gun.  Pitoau grabbed the gun, pointed it toward the ground – never at the group – and repeatedly told the group to "[b]ack the fuck up."  Jason approached Pitoau, grabbed at his hand in an attempt to disarm him, and the men struggled over the gun.  During the struggle, the gun discharged twice.

Pitoau ran off through downtown, ducking into a parking garage to change his shirt and hairstyle.  In a secluded area, he abandoned the gun by placing it under the tire of a parked semi truck so that the gun would get driven over and become unusable.  Pitoau messaged a friend through social media, stating, "I shot someone.  They all over me downtown."  Pitoau hitchhiked home, then fled the next day to Mexico.

Police found the gun and linked it to Pitoau through DNA.  DNA analysis excluded Pitoau's friend, Emery, as a possible contributor, and further excluded Jason as a contributor from one area of the gun, but indicated limited support for inclusion as to another area of the gun.

About one month after the incident, Pitoau was apprehended in Mexico and brought back to the United States.

Doc. No. 7-78 at 4–5.

On February 8, 2018, the San Diego County District Attorney's Office filed an Information charging Ray Koloseta Pitoau with three counts of assault with a firearm, a violation of California Penal Code ("Penal Code") § 245(a)(2) (counts one through three), one count of carrying a loaded firearm, a violation of Penal Code § 25850(a) (count four), one count of possession of a firearm by a felon, a violation of Penal Code § 29800(a)(1) (count five), and one count of possession a concealed firearm, a violation of Penal Code § 25400(a)(2) (count six).  Doc. No. 7-1 at 25–31.  The Information also alleged that as to counts one, two, and three, that he personally used a firearm, within the meaning of Penal Code §§ 12022.5(a) and 1192.7(c)(8), as to counts one and two, Pitoau personally inflicted great bodily injury, within the meaning of Penal Code §§ 12022.7(a) and 1192.7(c)(8), to count four he was not the registered owner of the firearm he possessed, within the meaning of Penal Code § 25850(c)(6), as to counts four and six he

had a prior robbery conviction, within the meaning of Penal Code §§ 25850(c)(1) and 25400(c)(1), and as to counts four, five and six that he was armed with a firearm during the commission of the offense, within the meaning of Penal Code §§ 667(e)(2)(C)(iii), and 1170.12(c)(2)(C)(iii).  *Id.*  Pitoau was also alleged to have suffered four prior convictions for which he served a prison sentence, within the meaning of Penal Code §§ 667.5(b) and 668, two prior convictions for serious felonies, within the meaning of Penal Code § 667(a)(1), 668, and 1192.7(c), and two strike prior convictions, within the meaning of Penal Code §§ 667(b)–(i), 668, and 1170.12.  *Id.*

Pitoau was tried by a jury three times.  Doc. No. 7-51 at 62–72, 201–08.  The first jury found Pitoau guilty of counts four, five, and six and found the associated enhancement allegations to be true, but it did not reach a verdict on counts one, two, and three.  *See People v. Pitoau*, No. D075068, 2020 WL 1861668, at *1 (Cal. Ct. App. Apr. 14, 2020).  At a second trial, the jury again failed to reach a verdict on counts one, two, and three; the third jury found Pitoau guilty of counts one, and two, and the allegations associated with those counts to be true; Pitoau admitted the prior convictions as charged.  Doc. No. 7-3 at 55–56; Doc. No. 7-51 at 200–07.  He was found not guilty of count three.  Doc. No. 7-51 at 208.  The total sentence he received on all counts and allegations was fifty years-to-life plus twenty-one years on counts one through three, and twenty-five years-to-life plus four years on counts four through six.  *Id.* at 123–25, 210–12.[1]

Pitoau appealed his convictions on counts one through three to the California Court of Appeal, which affirmed his convictions in a written opinion.  Doc. Nos. 7-75–7-78. He then filed a petition for review in the California Supreme Court, which issued a summary denial.  Doc. Nos. 7-79–7-80.  He filed his federal habeas corpus petition in this Court on October 26, 2022.  Doc. No. 1.  Respondent filed an Answer and Memorandum

---

[1] Following his convictions on counts four, five, and six, Pitoau was sentenced on those counts and appealed those convictions and sentences separately.  *See People v. Pitoau*, No. D075068, 2020 WL 1861668, at *1 (Cal. Ct. App. Apr. 14, 2020).  That appeal is not relevant here.

in Support of the Answer on January 31, 2023, and Pitoau filed a Traverse on April 3, 2023.  Doc. Nos. 6, 6-1, 10.

## II. ANALYSIS

### A.  Legal Standard

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).  Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *See Bell v. Cone*, 535 U.S. 685, 694 (2002).  The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case.  *Id*.  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Andrade*, 538 U.S. at 75 (the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established

1  federal law must be "objectively unreasonable").  The Court may also grant relief if the

2  state court's decision was based on an unreasonable determination of the facts.  28 U.S.C.

3  § 2254(d)(2).

4        Where there is no reasoned decision from the state's highest court, the Court

5  "looks through" to the last reasoned state court decision and presumes it provides the

6  basis for the higher court's denial of a claim or claims.  *See Ylst v. Nunnemaker*, 501 U.S.

7  797, 805–06 (1991).  If the dispositive state court order does not "furnish a basis for its

8  reasoning," the Court must conduct an independent review of the record to determine

9  whether the state court's decision is contrary to, or an unreasonable application of, clearly

10 established Supreme Court law.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000)

11 (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*,

12 336 F.3d 848, 853 (9th Cir. 2003

13 **B.  Discussion**

14       Pitoau raises one claim in his Petition, contending he was denied a fair trial when

15 the state court refused to instruct the jury on the defense of accident.  Doc. No. 1 at 6.

16 Respondent contends Pitoau is not entitled to relief because the state court's resolution of

17 the claim was neither contrary to, nor an unreasonable application of, clearly established

18 Supreme Court law.  Doc. No. 6-1.

19       Pitoau raised his claim in the Petition for Review he filed in the California

20 Supreme Court, arguing that the trial court erred when it denied the defense request to

21 instruct the jury on the defense of accident.  Doc. No. 7-79.  The California Supreme

22 Court summarily denied the petition, and thus this Court must "look through" to the last

23 reasoned state court decision, the California Court of Appeal's opinion, to determine

24 whether the denial of this claim was contrary to, or an unreasonable application of,

25 clearly established Supreme Court law.  *Ylst*, 501 U.S. at 805–06.  That court wrote:

26         We need not decide whether substantial evidence supported Pitoau's
       accident theory–and, thus, whether the trial court erred by refusing to
27        instruct on that theory–because we conclude the omission of the instruction
       was harmless beyond a reasonable doubt.
28

1

2

3

4

5

6

We find *People v. Jones* (1991) 234 Cal.App.3d 1303 (*Jones*) highly instructive.  The defendant in *Jones* was convicted of attempted premeditated murder after he suddenly opened his car door during a traffic stop and pointed a shotgun at a sheriff's head.  (*Id.* at pp. 1306, 1308.) When the deputy "made a sweeping motion with his left hand to try to knock the shotgun barrel away . . . , the shotgun went off, striking [the deputy]." (*Ibid.*)  When the defendant was apprehended, he told the arresting officer, "I didn't mean to shoot him."  (*Id.* at pp. 1308–1309.)

7

8

9

10

11

12

13

14

15

16

17

18

19

On appeal, the defendant argued "the trial court committed prejudicial error by failing to instruct the jury sua sponte on the defense of 'accident and misfortune.'"  (*Jones, supra,* 234 Cal.App.3d at p. 1313.)  The Court of Appeal agreed there was error because "a reasonable juror could have concluded" "that the shotgun discharged by accident, as a result of being struck by [the deputy]."  (*Id.* at p. 1314.) [fn.2 omitted].  But the court found the error "was harmless beyond a reasonable doubt" (*id.* at p. 1316) because "*other* proper instructions adequately guide[d] the jury in reaching factual determinations on those issues which would have been presented to the jury by the omitted instruction" (*id.* at p. 1314).  Specifically, the trial court instructed the jury that to find the attempted murder was premeditated, the jury would have to find it was "willful, deliberate and premeditated."  (*Id.* at p. 1315.)  "'Willful' was properly defined for the jury as meaning 'intentional.'"  (*Ibid.*)  The appellate court reasoned that by finding that the defendant had acted willfully, "it [was] clear, beyond credible argument, that the jury necessarily rejected the evidence . . . that would have supported a finding to the effect that defendant's 'accident and misfortune' defense . . . was valid, thus implicitly resolving the question of that defense adversely to defendant."  (*Id.* at pp. 1315–1316.)

20

21

22

23

24

25

26

27

28

Likewise, if there was any error here, it was harmless beyond a reasonable doubt.  The trial court instructed the jury that to find Pitoau guilty of assault with a firearm or simple assault, the jury had to find beyond a reasonable doubt that Pitoau "willfully" did an act "that by its nature would directly and probably result in the application of force to a person." (CALCRIM Nos. 875, 915.)  The court also instructed the jury that to find the firearm enhancement allegations true, the jury had to find beyond a reasonable doubt that Pitoau "intentionally" did a specified act with a firearm.  (CALCRIM No. 3146.)  Counsels' closing arguments squarely addressed these concepts.  By finding Pitoau guilty and the enhancement allegations to be true, the jury necessarily found that he acted "willfully," "willingly," "on purpose," and "intentionally" – that is, he did not act

1
2
accidentally.  Thus, the failure to instruct on accident was harmless beyond a
reasonable doubt.

3
Doc. No. 7-18 at 10–13.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
　　　To the extent Pitoau is challenging the state court's application of California evidentiary law, he is not entitled to relief.  Federal habeas relief is not available for alleged violations of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  The state court did not resolve the question of whether the failure to instruct the jury on the defense of accident was federal constitutional error, opting to analyze any potential error under *Chapman v. California*, 386 U.S. 18 (1967).  *Chapman* held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  *Chapman*, 386 U.S. at 24.[2]  The Court must therefore analyze Pitoau's constitutional challenge to the failure to give an instruction on the defense of accident *de novo*.  *Tamplin v. Muniz*, 894 F.3d 1076, 1086 (9th Cir. 2018)  ("if the last reasoned decision did not address a properly raised question, [the district court must] decide the question de novo") (citing *Viscotti v. Martel*, 862 F.3d 749, 760 (9th Cir. 2016) and *Frantz v. Hazey*, 533 F.3d 724, 738 (9th Cir. 2008)).

19
20
21
22
23
　　　As a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.  *Mathews v. United States*, 485 U.S. 58, 63 (1988) (citing *Stevenson v. United States*, 162 U.S. 313 (1896)).  The Ninth Circuit has noted that "[u]nder the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with

24

25
26
27
28
[2] Although the state appellate court did not cite directly to *Chapman*, it did cite to *People v. Lujano*, 15 Cal. App. 5th 187, 195–96 (2017) for the standard of review it was applying.  *Lujano* cited to *Chapman* as the proper standard of review for a jury instruction error that is of constitutional magnitude.  *Lujano*, 187 Cal. App. 5th at 195–96.

22-cv-01677-MMA (MSB)

prevailing notions of fundamental fairness . . . [which] require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *Bradley v. Duncan*, 315 F.3d 1091, 1098–99 (9th Cir. 2002) (citing *Mathews*, 485 U.S. at 63 and *California v. Trombetta* , 467 U.S. 479, 485 (1984)).  When determining whether error occurred, however, the Court must consider the jury instructions as a whole, *Estelle*, 502 U.S. at 72. The jury instruction at issue cannot be judged in isolation, but rather "must be considered in the context of the instructions as a whole and the trial record." *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009) (quoting *Estelle*, 502 U.S. at 72) (internal quotation marks omitted).  "A habeas petitioner must show that the alleged instructional error 'had substantial and injurious effect or influence in determining the jury's verdict'" in order to obtain relief.  *Clark v. Brown*, 450 F.3d 898, 905 (9th Cir. 2006) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *see also Beardslee v. Woodford*, 358 F.3d 560 578 (9th Cir. 2004)

Pitoau was found guilty of assault with a firearm and simple assault.  Doc. No. 7-51 at 200–07.  Assault is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  Cal. Penal Code § 240.  In order to prove a defendant committed an assault, the prosecution must prove, beyond a reasonable doubt, that:

> 1. The defendant did an act that by its nature would directly and probably result in the application of force to a person;
>
> 2. The defendant did that act willfully;
>
> 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that this act by its nature would directly and probably result in the application of force to someone;
>
> 4.  When the defendant acted, he had the present ability to apply force with a firearm to a person;
>
> AND
>
> 5. The defendant did not act in self-defense

Doc. No. 7-1 at 86 (CALCRIM No. 915).

The crime of assault with a firearm has all of the elements of simple assault with the additional requirement that the "act" committed by the defendant in paragraph one be done "with a firearm."  Doc. No. 7-1 at 82 –23 (CALCRIM No. 875).

The instructions given to the jury, which included CALCRIM Nos. 875 and 915, define "willfully" as "[an act done] willingly or on purpose," and that the prosecution need not show the defendant intended to break the law or hurt someone.  Doc. No. 7-1 at 82–83, 86 (CALCRIM Nos. 875, 915).  The defense requested the jury be given CALCRIM No. 3404 on the defense of accident, which is defined as follows:

> The defendant is not guilty of [insert crime[s]] if (he/she) acted . . . without the intent required for that crime, but acted instead accidentally. You may not find the defendant guilty of [insert crime[s]] unless you are convinced beyond a reasonable doubt that (he/she) acted with the required intent.]

*See* Doc. No. 7-70 at 152–53.

In order to find Pitoau guilty of simple assault and assault with a firearm, the instructions required the jury to find, beyond a reasonable doubt, that Pitoau acted "willfully" or "on purpose," and the jury instructions for the firearm enhancements required the jury to find that Pitoau acted "intentionally."  Doc. No. 7-1 at 82–23 (CALCRIM No. 875), 84–85 (CALCRIM No. 3146), 86 (CALCRIM No. 915).   For the jury to find Pitoau guilty of the assault and assault with a firearm charges, as well as find the weapons enhancements to be true, they necessarily had to have found that Pitoau's actions were "on purpose" and "intentional" and therefore not accidental.  Accordingly, considering the jury instructions as a whole, as this Court is required to do under *Estelle*, 502 U.S. at 72, the lack of an explicit instruction on the defense of accident did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

Further, the state court's conclusion that any error was harmless beyond a reasonable doubt was not contrary to, or an unreasonable application of, clearly

22-cv-01677-MMA (MSB)

established Supreme Court law.  *See* 28 U.S.C. § 2254(d)(2).  On federal habeas review, a federal court must review a state court's harmlessness determination pursuant to *Chapman* under AEDPA's standard, that is, it may not overturn the decision unless the court "applied *Chapman* in an 'objectively unreasonable manner.'"  *Davis v. Ayala*, 576 U.S. 257, 269 (2015) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003) (per curium)). The Supreme Court explained as follows:

> When a *Chapman* decision is reviewed under AEDPA, "a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself was unreasonable*." *Fry [v. Pliler]*, *supra*, [551 U.S.] at 119 [citation omitted] (emphasis in original).  And a state-court decision is not unreasonable if "'fairminded jurists could disagree' on [its] correctness." *[Harrington v.] Richter*, *supra*, [562 U.S.] at 101 [citations omitted].  [A petitioner] therefore must show that the state court's decision to reject his claim "was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  562 U.S., at 103 [citation omitted].

*Id.*

Pitoau has not shown state court's decision to reject his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Davis*, 576 U.S. at 269.  As discussed above, in order for the jury to find Pitoau guilty of the assault and assault with a firearm charges, as well as find true the firearm allegations, the jury had to find, beyond a reasonable doubt, that Pitoau acted "intentionally" and "on purpose."  Doc. No. 7-1 at 82–23 (CALCRIM No. 875), 84–85 (CALCRIM No. 3146), 86 (CALCRIM No. 915). Thus, as the state court reasonably concluded, the jury's guilty verdicts meant they did not find Pitoau's actions were accidental.  Accordingly, the state court's denial of this claim was therefore neither contrary to, nor an unreasonable determination of, clearly established Supreme Court law, and Pitoau is not entitled to relief. *Bell*, 535 U.S. at 694; *Davis*, 576 U.S at 269.

/ / /

/ / /

## V.  CONCLUSION

For the foregoing reasons, the Petition is **DENIED**.  Rule 11 of the Rules Following 28 U.S.C. § 2254 require the District Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254 (West 2019).  A COA will issue when the petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (West 2019); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005).  A "substantial showing" requires a demonstration that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Beaty v. Stewart*, 303 F.3d 975, 984 (9th  Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Here, the Court concludes Pitoau has not made the required showing, and therefore a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 29, 2024

HON. MICHAEL M. ANELLO
United States District Judge

22-cv-01677-MMA (MSB)